

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

---

### NO. 2-08-128-CR

---

GRADY LEROY MARTIN                                    APPELLANT

V.

THE STATE OF TEXAS                                        STATE

------------

FROM COUNTY CRIMINAL COURT NO. 9 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

Appellant Grady Leroy Martin appeals his conviction and sentence for the offense of driving while intoxicated - misdemeanor repetition.[2] In five points, Martin argues that the trial court abused its discretion by failing to suppress blood test results, by admitting expert testimony that did not comport with

---

[1] *See* Tex. R. App. P. 47.4.

[2] During the punishment hearing, Martin pleaded true to a prior 2005 DWI conviction.

Texas Rule of Evidence 702 and that violated his rights under the Confrontation Clause, and by placing him on community supervision and ordering him to serve five days' confinement as a condition of his community supervision. We will affirm.

## II. BACKGROUND

A black truck rear-ended Ronald Williams's car while he was stopped at a stoplight. The impact caused Williams's vehicle to collide with the vehicle in front of his. Following the accident, Williams saw a man exit the truck and flee the scene. Officer Christina Hunt located Martin and brought him back to the scene where a witness to the accident identified Martin as the man who had exited the truck and fled the scene.

Officer Vanessa Hansard, who had been dispatched to the scene, testified at trial that although Martin did not smell of alcohol while in her custody, he slurred his words and exhibited balance problems. Officer Hansard formed the opinion that Martin was intoxicated by something other than alcohol. Because Martin refused to perform any sobriety tests or to take a breath test, Officer Hansard prepared an affidavit for a blood-draw search warrant, and a judge[3]

---

[3] In this case, Judge Billy Mills from County Criminal Court No. 3 issued the blood draw warrant. Throughout the remainder of the opinion, we refer to him as "magistrate" to reflect the capacity in which he was serving.

2

subsequently signed a search warrant based on Officer Hansard's affidavit. Martin's blood was then drawn and transported to the Tarrant County Medical Examiner's Office for analysis. At trial, a toxicologist from the medical examiner's office testified that Martin's blood revealed the presence of the drugs meprobamate, diazepam, nordiazepam, and methadone, the synergistic effect of which would cause intoxication.

Martin was charged with failure to stop and render aid and with DWI. For the failure to stop and render aid charge, Martin was tried, convicted, and served two years prior to the DWI trial. For the DWI charge, after the jury convicted Martin, the trial court sentenced him to 365 days in jail and assessed a $4,000 fine. The trial court then suspended the sentence and placed Martin on twenty-four months' community supervision and ordered Martin to spend five days in jail as a condition of his community supervision. Martin objected to the five days' confinement on the ground that this DWI arose out of the same criminal episode as the failure to stop and render aid charge and that the sentence would cause him "to serve more than the law allows." The trial court implicitly overruled Martin's objection and imposed the condition. This appeal followed.

### III. AFFIDAVIT ALLEGES FACTS TO ESTABLISH PROBABLE CAUSE

In his first and second points, Martin argues that the trial court abused its discretion by failing to suppress evidence of his blood test results because the supporting affidavit did not allege facts sufficient to establish probable cause for the search warrant. Specifically, Martin argues that the affidavit is composed of mere conclusions unsupported by other observations, that it reflects material omissions, that it makes impermissible inferences, and that probable cause for DWI is not established.

#### A. Standard of Review and Law on Search Warrant Affidavits

Generally, the appropriate standard for reviewing a trial court's ruling on a motion to suppress is a bifurcated standard of review, giving almost total deference to the trial court's determination of historical facts and reviewing de novo the court's application of the law. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). But there are no credibility determinations to be made by the trial court in examining the sufficiency of an affidavit to determine probable cause because probable cause is determined from the four corners of the affidavit alone. *Hankins v. State*, 132 S.W.3d 380, 388 (Tex. Crim. App.), *cert. denied*, 543 U.S. 944 (2004); *Jones v. State*, 833 S.W.2d 118, 123 (Tex. Crim. App.

4

1992), *cert. denied*, 507 U.S. 921 (1993); *Tolentino v. State*, 638 S.W.2d 499, 501 (Tex. Crim. App. 1982).

Thus, when reviewing a magistrate's decision to issue a warrant, we apply a highly deferential standard in keeping with the constitutional preference for a warrant. *Rodriguez v. State*, 232 S.W.3d 55, 60 (Tex. Crim. App. 2007); *Swearingen v. State*, 143 S.W.3d 808, 810–11 (Tex. Crim. App. 2004). Under this standard, we uphold the magistrate's probable cause determination "so long as the magistrate had a 'substantial basis for . . . conclud[ing]'" that probable cause existed. *Illinois v. Gates*, 462 U.S. 213, 236, 103 S. Ct. 2317, 2331 (1983) (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S. Ct. 725, 736 (1960), *overruled on other grounds by U.S. v. Salvucci*, 448 U.S. 83, 100 S. Ct. 2547 (1980)); *see Swearingen*, 143 S.W.3d at 810.

Under the Fourth Amendment, an affidavit is sufficient if, from the totality of the circumstances reflected in the affidavit, the magistrate was provided with a substantial basis for concluding that probable cause existed. *Gates*, 462 U.S. at 238–39, 103 S. Ct. at 2332; *see* U.S. Const. amend. IV; *Ramos v. State*, 934 S.W.2d 358, 362–63 (Tex. Crim. App. 1996), *cert. denied*, 520 U.S. 1198 (1997).

Probable cause will be found to exist if the affidavit shows facts and circumstances within the affiant's knowledge and of which the affiant has

5

reasonably trustworthy information sufficient to warrant a person of reasonable caution to believe that the criteria set forth in code of criminal procedure article 18.01(c) have been met. *Tolentino*, 638 S.W.2d at 501; *see* Tex. Code Crim. Proc. Ann. art. 18.01(c) (Vernon Supp. 2008). The affidavit must set forth facts which establish that (1) a specific offense has been committed, (2) the property to be searched or items to be seized constitute evidence of the offense or evidence that a particular person committed the offense, and (3) the property or items are located at or on the person, place, or thing to be searched. Tex. Code Crim. Proc. Ann. art. 18.01(c); *Tolentino*, 638 S.W.2d at 501. Although a search warrant affidavit may not be based solely on hearsay or conclusory statements, a search warrant affidavit is not to be deemed insufficient on that score so long as a substantial basis for crediting the hearsay exists or corroborating facts within the officer's knowledge exist, respectively. *See Gates*, 462 U.S. at 241–43, 103 S. Ct. at 2333–35.

A reviewing court should not invalidate a warrant by interpreting the affidavit in a hypertechnical manner. *See Gates*, 462 U.S. at 236, 103 S. Ct. at 2331; *Rodriguez*, 232 S.W.3d at 59. Rather, when a court reviews an issuing magistrate's determination, the court should interpret the affidavit in a commonsense and realistic manner, recognizing that the magistrate may draw

6

reasonable inferences.  *See Rodriguez*, 232 S.W.3d at 61; *Davis v. State*, 202 S.W.3d 149, 154 (Tex. Crim. App. 2006).

**B.    The Search Warrant for Blood Draw**[4]

The facts alleged in Officer Hansard's affidavit include:  that Martin was involved in a three-vehicle accident, that he fled the scene of the accident, that he appeared very intoxicated and was very uncooperative, that he was found in possession of numerous narcotics, that he had a prior DWI arrest, that he stated that his lawyer had told him that he did not have to do anything the officers requested, that his speech was slurred and thick, that his eyes were heavy, that his walk and balance were unsteady, and that he was combative towards the officers.  After reviewing Officer Hansard's affidavit, a magistrate issued the search warrant for blood draw.  Prior to trial, Martin filed a motion to suppress all evidence obtained pursuant to the search warrant for blood draw.  The trial court denied the motion to suppress.

**C.    No Conclusory Statements**

On appeal, Martin first argues that the statement in Officer Hansard's affidavit that Martin "appeared very intoxicated" is a mere conclusion unsupported by other observations.  To the contrary, Officer Hansard explicitly

_____

[4] Because the search warrant at issue bears this title, we use the same title for ease of reference.

7

provided other facts in her affidavit to support her belief that Martin appeared intoxicated, namely that he failed to cooperate, was combative with officers, slurred his speech, and exhibited heavy eyes and unsteady balance. We hold that from the totality of the circumstances reflected in the affidavit, Officer Hansard's statement that Martin "appeared very intoxicated" was not conclusory and was properly included in her affidavit; the statement was based on sufficient underlying facts set forth in the affidavit from which the magistrate could independently determine whether probable cause existed that Martin was probably intoxicated while driving. *Cf. McKissick v. State*, 209 S.W.3d 205, 212 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (concluding that affidavit did not rely on conclusory statements to such an extent that it was insufficient to show probable cause); *Rodriguez v. State*, 781 S.W.2d 946, 949 (Tex. App.—Dallas 1989, pet. ref'd) (upholding search warrant when affidavit contained some conclusory statements regarding information received from informant because affidavit also recited investigation and activities by police, which added additional details and corroboration of facts received from informant).

## D.    Omitted Fact Does Not Vitiate Probable Cause

Martin next argues that the statement in Officer Hansard's affidavit concerning the "numerous narcotics" found in his possession was misleading

8

because, in fact, the narcotics were Martin's prescription medications. Martin argues that Officer Hansard's failure to state in her affidavit that the narcotics were prescription drugs belonging to Martin was a knowing omission rendering her affidavit insufficient to support a probable cause finding.

The United States Supreme Court has held that an affirmative misrepresentation of a material fact that establishes probable cause, made knowingly or recklessly in a probable cause affidavit, will render a search warrant invalid under the Fourth Amendment. *See Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S. Ct. 2674, 2676 (1978). Although the Texas Court of Criminal Appeals has never directly decided whether a *Franks* analysis applies to omissions,[5] this court, other Texas courts of appeals, and the Fifth Circuit have held that, when a defendant seeks to suppress evidence lawfully obtained by a warrant based on an alleged omission in the affidavit supporting the warrant, he must establish by a preponderance of the evidence that the omission was made knowingly, intentionally, or with reckless disregard for the truth in an attempt to mislead the magistrate. *See Darby v. State*, 145 S.W.3d

---

[5] *See Ward v. State*, No. AP-74695, 2007 WL 1492080, at *3–4 (Tex. Crim. App. May 23, 2007) (not designated for publication) (stating that "[t]his Court has yet to state clearly that *Franks* should apply to omissions" and that "[w]e need not decide that issue today"), *cert. denied*, 128 S. Ct. 650 (2007); *see also Renteria v. State*, 206 S.W.3d 689, 704 (Tex. Crim. App. 2006) (assuming that *Franks* applied to omissions in an affidavit).

714, 722 (Tex. App.—Fort Worth 2004, pet. ref'd); *McKissick*, 209 S.W.3d at 211–14; *Heitman v. State*, 789 S.W.2d 607, 610 (Tex. App.—Dallas 1990, pet. ref'd); *Melton v. State*, 750 S.W.2d 281, 284 (Tex. App.—Houston [14th Dist.] 1988, no pet.); *see also United States v. Martin*, 615 F.2d 318, 328 (5th Cir. 1980). Accordingly, if a defendant establishes by a preponderance of the evidence that omissions of fact were made in a probable cause affidavit and that such omissions were made knowingly, intentionally, or with reckless disregard for the truth, the warrant will be held invalid if the inclusion of the omitted facts would vitiate probable cause. *Martin*, 615 F.2d at 328.

Here, the record does not reflect that Officer Hansard intentionally or knowingly, with reckless disregard for the truth, made any omissions in the affidavit that would affect the finding of probable cause to support the issuance of the search warrant for blood draw. Martin has not shown that use of the phrase "numerous narcotics" constituted a material misrepresentation or that Officer Hansard's failure to specifically identify the narcotics as prescription drugs prescribed to Martin constituted an omission made by Officer Hansard intentionally or knowingly with reckless disregard for the truth in an attempt to mislead the magistrate. Nor has Martin shown that the affidavit, if supplemented with the omitted information—that is, that the numerous narcotics were prescription drugs prescribed to Martin—would be insufficient

10

to support a finding of probable cause.[6]  Therefore, we hold that the affidavit was not rendered insufficient by the omission of the fact that the "numerous narcotics" referenced in the affidavit were Martin's prescription drugs.  *See Darby*, 145 S.W.3d at 722–23 (concluding that affidavit for search warrant was not rendered invalid by the omission of material facts); *see also Garza v. State*, 161 S.W.3d 636, 641 (Tex. App.—San Antonio 2005, no pet.) (upholding warrant when affidavit omitted reference to fact that witness gave conflicting testimony to police when initially interviewed).

## E. Additional Statements Can Be Omitted Without Vitiating Probable Cause

Martin's final argument within his first and second points is that Officer Hansard's statements in the affidavit that Martin was "being uncooperative and requested counsel could not be taken as evidence to support the issuance of

---

[6] The State points out that

> [i]t is difficult to fathom how [the fact that the "numerous narcotics" were Martin's prescription medications] could have been relevant to a magistrate trying to determine the existence of probable cause.  If the suspect is driving around in what seems to be a mobile drug store, and appears to be under the influence of narcotics, it hardly matters whether his drugs are in neat bottles or in a more traditional "junkie" packaging.

Moreover, the voluntary taking of prescription drugs, which impair mental or physical faculties, is not a defense to DWI.  *See generally Nelson v. State*, 149 S.W.3d 206, 210 (Tex. App.—Fort Worth 2004, no pet.).

11

the warrant" because "[a] request for counsel cannot be used as an inference of guilt." But the affidavit here does not contain a statement that Martin requested counsel; instead, the affidavit contains the statement that Martin "stated that his lawyer told him that he did not have to do anything officers requested." That statement, when viewed from the totality of the circumstances, would appear to explain why Martin refused to perform field sobriety tests and why the blood draw was needed but does not constitute a request for counsel. *Accord Dinkins v. State*, 894 S.W.2d 330, 350–52 (Tex. Crim. App.) (holding that record did not support a showing that appellant requested an attorney even though at some point during the interrogation appellant asked detective "what a lawyer would tell him to do," and detective informed appellant "in no uncertain terms that a lawyer would tell him to keep his mouth shut and not to talk to the police at all"), *cert. denied*, 516 U.S. 832 (1995). Even leaving out those two statements—that Martin was uncooperative and that he stated that his lawyer told him that he did not have to do anything officers requested—the affidavit alleges sufficient other facts, which are set forth above, to support a finding of probable cause for issuance of a search warrant for blood draw. As such, we hold that the affidavit provided the magistrate with sufficient information to support an independent judgment that probable cause for DWI existed for the search warrant for blood

12

draw. *See Pitonyak v. State*, 253 S.W.3d 834, 848 (Tex. App.—Austin 2008, pet. ref'd) (holding that if tainted information is unnecessary to establish probable cause for the warrant, then the defendant could not have been harmed by the inclusion of the tainted information); *Riley v. State*, No. 03-04-00206-CR, 2004 WL 2900508, at *1 (Tex. App.—Austin Dec. 16, 2004, pet. ref'd) (mem. op., not designated for publication) (stating that even if challenged passage is removed from affidavit, the remaining information stated probable cause for issuing the search warrants).

## F.    Motion to Suppress Properly Denied

In light of the information contained within the four corners of Officer Hansard's affidavit, we hold that, considering the totality of the circumstances, the magistrate had a substantial basis for concluding that probable cause existed to support the issuance of the search warrant for blood draw. *See Gates*, 462 U.S. at 238, 103 S. Ct. at 2332; *Vafaiyan v. State*, 279 S.W.3d 374, 384 (Tex. App.—Fort Worth 2008, pet. ref'd) (holding that when considered together with the other evidence described within the four corners of the affidavits, the totality of the circumstances provided the magistrate with a substantial basis for concluding probable cause existed to search); *see also Goodrum v. State*, No. 01-01-00950-CR, 2003 WL 1995634, at *5 (Tex. App.—Houston [1st Dist.] May 1, 2003, pet. ref'd) (mem. op., not designated

for publication) (concluding that, under the totality of the circumstances, the magistrate had sufficient evidence linking appellant to the crime to issue a search warrant allowing police to draw his blood to further their investigation). Accordingly, we hold that the trial court did not abuse its discretion by denying Martin's motion to suppress and by admitting the blood test result. *See Cantu v. State*, No. 05-07-01625-CR, 2009 WL 1479412, at *2 (Tex. App.—Dallas May 28, 2009, no pet.) (not designated for publication) (holding that trial court did not err by denying appellant's motion to suppress after appellate court reviewed the affidavit as a whole and concluded that affidavit authorized magistrate's issuance of search warrant for collection of buccal swabs); *Torres v. State*, No. 04-07-00522-CR, 2009 WL 89695, at *3 (Tex. App.—San Antonio Jan. 14, 2009, pet. ref'd) (mem. op., not designated for publication) (holding that trial court did not abuse its discretion by denying motion to suppress the results of the legal blood draw and by admitting that evidence at trial). We overrule Martin's first and second points.

### IV. CHALLENGES TO DR. SPRINGFIELD'S TESTIMONY; MARTIN FAILED TO PRESERVE RULE 702 ARGUMENT

#### A. Rule 702 Challenge

In his third point, Martin argues that the trial court abused its discretion by allowing lab supervisor Dr. Angela Springfield to testify. Martin argues that

14

Dr. Springfield's testimony did not comport with Texas Rule of Evidence 702 because she did not personally conduct the blood tests on Martin's blood sample and because her testimony failed to establish that the technique that was used to test the blood sample was properly applied.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a)(1); *Mosley v. State*, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004). An objection preserves only the specific ground cited. Tex. R. App. P. 33.1(a)(1)(A); *Mosley*, 983 S.W.2d at 265; *Bell v. State*, 938 S.W.2d 35, 54 (Tex. Crim. App. 1996), *cert. denied*, 522 U.S. 827 (1997); *see also Fierro v. State*, 706 S.W.2d 310, 317−18 (Tex. Crim. App. 1986) (holding that general objection is insufficient to apprise trial court of complaint urged and thus preserves nothing for review), *cert. denied*, 521 U.S. 1122 (1997). The complaint made on appeal must comport with the complaint made in the trial court or the error is forfeited.

15

*Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004); *Bell*, 938 S.W.2d at 54; *Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990).

Martin, without giving a reason for doing so, asked to take Dr. Springfield on voir dire outside the presence of the jury.  The trial court granted Martin's request.  Dr. Springfield testified that she did not personally perform the tests on Martin's blood and that she could not recall whether she had witnessed the tests but that she could attest to the fact that the procedures of the laboratory were followed and that the controls, standards, and data retrieved were appropriate.

On appeal, Martin argues that the trial court erred by admitting the testimony of Dr. Springfield because it did not comport with rule 702.[7]  But Martin did not assert a rule 702 objection in the trial court.  Because Martin failed to object at trial to Dr. Springfield's competency to testify as an expert, he has forfeited this argument on appeal.  *See Martinez v. State*, 22 S.W.3d 504, 507 (Tex. Crim. App. 2000) (stating that defendant's repeated objections concerning her right to confront witnesses did not preserve error on the ground

---

[7] Texas Rule of Evidence 702 provides that if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.  Tex. R. Evid. 702.

that witness was not qualified as an expert when defendant did not once object to witness's qualifications as an expert); *Matson v. State*, 819 S.W.2d 839, 852 (Tex. Crim. App. 1991) (stating that "[i]t is a familiar rule of law that the failure to object to a witness's competency to testify operates as a waiver of the witness's qualifications and may not be raised for the first time on appeal"). We therefore overrule Martin's third point.

### B.    Confrontation Clause Challenge

In his fourth point, Martin argues that the trial court abused its discretion by admitting the testimony of Dr. Springfield on the ground that the testimony violated his rights under the Confrontation Clause.  Martin contends that Dr. Springfield's testimony deprived him of the opportunity to confront and cross-examine a witness against him because he was unable to question the person who had performed the testing on his blood sample.

In *Crawford v. Washington*, the United States Supreme Court held that admitting a statement made by a nontestifying declarant offends the Confrontation Clause of the Sixth Amendment if the statement was "testimonial" when made and the defendant lacked a prior opportunity for cross-examination.  541 U.S. 36, 68, 124 S. Ct. 1354, 1374 (2004).  Thus, *Crawford* applies to a nontestifying declarant's out-of-court statements that are testimonial.

17

Here, after Martin questioned Dr. Springfield outside the presence of the jury, he objected to Dr. Springfield's testimony on the ground that it violated his rights under the Confrontation Clause because he was unable to confront the person who actually performed the blood tests.[8] The trial court overruled Martin's Confrontation Clause objection. Dr. Springfield then testified before the jury without objection regarding the chain of custody of the vials of Martin's blood and the testing procedures utilized on Martin's blood samples.[9] She stated that three types of tests were performed, and she described the purpose, process, and results of each test, including the general effects that each substance found in Martin's blood would have on the human body. She testified that the substances found in Martin's blood included meprobamate, diazepam, nordiazepam, and methadone; that the synergistic effect of these drugs would cause a person to lose the normal use of his or her physical and mental faculties; and that she would deem such a person intoxicated. The

---

[8] The specific objection Martin made at trial is as follows:

[MARTIN'S COUNSEL]: Your Honor, we're going to object based on the confrontation clause. She says she's not the one who actually did the tests. I can't question the person who did the test to how they done it to see exactly whether they done it properly and all of that. She has records that she's reviewed, but she's not -- she's not the one who did it. So I'm going to make a confrontation clause objection to the admission of this evidence.

[9] As noted above, Dr. Springfield did not perform the tests herself.

18

toxicology test results, which were signed by Dr. Springfield, were then admitted into evidence without objection. Martin then cross-examined Dr. Springfield.

We conclude that Dr. Springfield's testimony about the chain of custody of the vials of Martin's blood and the testing procedures utilized on Martin's blood samples is not governed by *Crawford* because no out-of-court statement was admitted through her testimony. Rather, Dr. Springfield's in-court testimony was admitted based upon her own personal knowledge acquired from having trained and worked at the Tarrant County Medical Examiner's laboratory. The Sixth Amendment concerns about out-of-court-statements at issue in *Crawford*, therefore, do not apply to Dr. Springfield's in-court testimony. *See Camacho v. State*, Nos. 2-07-322-CR, 2009 WL 2356885, at *3 (Tex. App.—Fort Worth July 30, 2009, no pet. h.) (mem. op., not designated for publication) (holding that Sixth Amendment concerns at issue in *Crawford* did not apply to testimony that was chemist's in-court statement based upon her own personal knowledge acquired from having trained and worked at the DPS laboratory); *Blaylock v. State*, 259 S.W.3d 202, 207–08 (Tex. App.—Texarkana 2008, pet. ref'd) (holding that testimony of the expert witness concerning the chemical analysis of the substance, which was determined by applying his expertise to reliable scientific test data, was

19

admissible as he was subject to cross-examination, so the requirements of the Confrontation Clause were fulfilled), *cert. denied*, 77 U.S.L.W. 3710 (U.S. June 29, 2009) (No. 08-8259). Thus, we hold that the trial court did not abuse its discretion by admitting Dr. Springfield's in-court testimony concerning analysis of the blood test results over Martin's Confrontation Clause objection. We overrule Martin's fourth point.

## V. TRIAL COURT'S SENTENCE WAS PROPER

In his fifth point, Martin argues that the trial court erred by sentencing him on the DWI to twenty-four months' community supervision and by ordering him to serve five days' confinement as a condition of community supervision. Specifically, Martin claims that because the DWI arose out of the same criminal episode as his conviction for failure to stop and render aid, the trial court could not order community supervision that required him to serve five additional days when the statute provides that sentences for offenses arising out of the same criminal episode must run concurrently. Additionally, Martin argues that his sentence is illegal because it exceeds the maximum sentence allowed by law for the charge of DWI - misdemeanor repetition.

We review a trial court's decision to cumulate sentences for an abuse of discretion. *See* Tex. Code Crim. Proc. Ann. art. 42.08(a) (Vernon 2006); *Nicholas v. State*, 56 S.W.3d 760, 764 (Tex. App.—Houston [14th Dist.]

20

2001, pet. ref'd); *see also Cyphers v. State*, No. 12-07-00304-CR, 2009 WL 606550, at *3 (Tex. App.—Tyler Mar. 11, 2009, pet. filed) (mem. op., not designated for publication). As a practical matter, however, an abuse of discretion generally will be found only if the trial court imposes consecutive sentences where the law requires concurrent sentences, where the trial court imposes concurrent sentences but the law requires consecutive ones, or where the trial court otherwise fails to observe the statutory requirements pertaining to sentencing. *Nicholas*, 56 S.W.3d at 765; *Cyphers*, 2009 WL 606550, at *3.

When a defendant is found guilty of more than one offense arising out of the same criminal episode prosecuted in a single criminal action, a sentence for each offense for which he has been found guilty shall be pronounced, and unless an exception applies, the sentences shall run concurrently. Tex. Penal Code Ann. § 3.03(a) (Vernon Supp. 2008). "A 'single criminal action' refers to a single trial or plea proceeding; as such, a defendant is prosecuted in a 'single criminal action' when allegations and evidence of more than one offense arising out of the same criminal episode are presented in a single trial or plea proceeding." *Malone v. State*, 163 S.W.3d 785, 804 (Tex. App.—Texarkana 2005, pet. ref'd).

Here, the record clearly demonstrates that, while the charges for DWI - misdemeanor repetition and failure to stop and render aid may have arisen out of the same criminal episode, they were not adjudicated in a "single criminal action." *See id.* In fact, the DWI record before us offers little evidence concerning Martin's conviction for failure to stop and render aid. As such, the trial court did not err by failing to have the sentence from Martin's DWI - misdemeanor repetition conviction run concurrently with his conviction for failure to stop and render aid because the two convictions were tried in separate criminal actions. *See* Tex. Penal Code Ann. § 3.03(a); *Ex parte Pharr*, 897 S.W.2d 795, 796 (Tex. Crim. App. 1995) (holding that cumulation order did not violate section 3.03 when statement of facts showed that in cause number 7760 applicant pleaded guilty, was admonished, was found guilty, and was sentenced and immediately thereafter, in cause number 7761 applicant pleaded guilty, was admonished, was found guilty, and was sentenced because record supported trial court's finding that applicant was not tried in a single criminal action).

Moreover, the sentence was not illegal. Texas Code of Criminal Procedure article 42.12, section 13(a)(1) mandates that a judge granting community supervision to a defendant convicted of an offense under chapter 49 of the penal code, which includes DWI, shall require as a condition of

22

community supervision that the defendant submit to not less than five days' confinement. Tex. Code Crim. Proc. Ann. art. 42.12, § 13(a)(1) (Vernon Supp. 2008). Under section 13(e), it states that the confinement imposed—here, the five days—shall be treated as a condition of community supervision. *Id.* art. 42.12, § 13(e). And while community supervision is part of the "judgment," it is not part of the "sentence," as those terms are defined in the Texas Code of Criminal Procedure. *Speth v. State*, 6 S.W.3d 530, 532 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1088 (2000).

Therefore, we hold that the trial court did not err by placing Martin on twenty-four months' community supervision after he had already served two years for his failure to stop and render aid conviction because penal code section 3.03(a) did not apply; nor did the trial court err by ordering Martin to serve five days' confinement as a condition of community supervision because the confinement is mandated by code of criminal procedure article 42.12, section 13(a)(1). *See* Tex. Penal Code Ann. § 3.03(a); Tex. Code Crim. Proc. Ann. art. 42.12, § 13(a)(1). We overrule Martin's fifth point.

## VI. Conclusion

Having overruled Martin's five points, we affirm the trial court's judgment.

SUE WALKER
JUSTICE

PANEL:  CAYCE, C.J.; WALKER and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  August 6, 2009