COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-08-128-CR

 

 

GRADY LEROY MARTIN                                                       APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM COUNTY CRIMINAL
COURT NO. 9 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

                                       I. 
Introduction








Appellant Grady Leroy Martin appeals his
conviction and sentence for the offense of driving while intoxicated -
misdemeanor repetition.[2]  In five points, Martin argues that the trial
court abused its discretion by failing to suppress blood test results, by
admitting expert testimony that did not comport with Texas Rule of Evidence 702
and that violated his rights under the Confrontation Clause, and by placing him
on community supervision and ordering him to serve five days=
confinement as a condition of his community supervision.  We will affirm.

                                        II.  Background

A black truck rear-ended Ronald Williams=s car
while he was stopped at a stoplight.  The
impact caused Williams=s vehicle to collide with the
vehicle in front of his.  Following the
accident, Williams saw a man exit the truck and flee the scene.  Officer Christina Hunt located Martin and
brought him back to the scene where a witness to the accident identified Martin
as the man who had exited the truck and fled the scene.








Officer Vanessa Hansard, who had been dispatched
to the scene, testified at trial that although Martin did not smell of alcohol
while in her custody, he slurred his words and exhibited balance problems.  Officer Hansard formed the opinion that
Martin was intoxicated by something other than alcohol.  Because Martin refused to perform any
sobriety tests or to take a breath test, Officer Hansard prepared an affidavit
for a blood-draw search warrant, and a judge[3]
subsequently signed a search warrant based on Officer Hansard=s
affidavit.  Martin=s blood
was then drawn and transported to the Tarrant County Medical Examiner=s Office
for analysis.  At trial, a toxicologist
from the medical examiner=s office testified that Martin=s blood
revealed the presence of the drugs meprobamate, diazepam, nordiazepam, and
methadone, the synergistic effect of which would cause intoxication.

Martin was charged with failure to stop and
render aid and with DWI.  For the failure
to stop and render aid charge, Martin was tried, convicted, and served two
years prior to the DWI trial.  For the
DWI charge, after the jury convicted Martin, the trial court sentenced him to
365 days in jail and assessed a $4,000 fine. 
The trial court then suspended the sentence and placed Martin on
twenty-four months= community supervision and
ordered Martin to spend five days in jail as a condition of his community
supervision.  Martin objected to the five
days=
confinement on the ground that this DWI arose out of the same criminal episode
as the failure to stop and render aid charge and that the sentence would cause
him Ato serve
more than the law allows.@ 
The trial court implicitly overruled Martin=s
objection and imposed the condition. 
This appeal followed.








      III.
 Affidavit Alleges Facts to Establish Probable
Cause

In his first and second points, Martin argues
that the trial court abused its discretion by failing to suppress evidence of
his blood test results because the supporting affidavit did not allege facts
sufficient to establish probable cause for the search warrant.  Specifically, Martin argues that the
affidavit is composed of mere conclusions unsupported by other observations,
that it reflects material omissions, that it makes impermissible inferences,
and that probable cause for DWI is not established.

A.     Standard of Review and Law on Search
Warrant Affidavits








Generally, the appropriate standard for reviewing
a trial court=s ruling on a motion to suppress
is a bifurcated standard of review, giving almost total deference to the trial
court=s
determination of historical facts and reviewing de novo the court=s
application of the law.  Amador v.
State, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); Guzman v. State,
955 S.W.2d 85, 89 (Tex. Crim. App. 1997). 
But there are no credibility determinations to be made by the trial court
in examining the sufficiency of an affidavit to determine probable cause
because probable cause is determined from the four corners of the affidavit
alone.  Hankins v. State, 132
S.W.3d 380, 388 (Tex. Crim. App.), cert. denied, 543 U.S. 944 (2004); Jones
v. State, 833 S.W.2d 118, 123 (Tex. Crim. App. 1992), cert. denied,
507 U.S. 921 (1993); Tolentino v. State, 638 S.W.2d 499, 501 (Tex. Crim.
App. 1982).

Thus, when reviewing a magistrate=s
decision to issue a warrant, we apply a highly deferential standard in keeping
with the constitutional preference for a warrant.  Rodriguez v. State, 232 S.W.3d 55, 60
(Tex. Crim. App. 2007); Swearingen v. State, 143 S.W.3d 808, 810B11 (Tex.
Crim. App. 2004).  Under this standard,
we uphold the magistrate=s probable cause determination Aso long
as the magistrate had a >substantial basis for . . .
conclud[ing]=A that
probable cause existed.  Illinois v.
Gates, 462 U.S. 213, 236, 103 S. Ct. 2317, 2331 (1983) (quoting Jones v.
United States, 362 U.S. 257, 271, 80 S. Ct. 725, 736 (1960), overruled
on other grounds by U.S. v. Salvucci, 448 U.S. 83, 100 S. Ct. 2547
(1980)); see Swearingen, 143 S.W.3d at 810.

Under the Fourth Amendment, an affidavit is
sufficient if, from the totality of the circumstances reflected in the
affidavit, the magistrate was provided with a substantial basis for concluding
that probable cause existed.  Gates,
462 U.S. at 238B39, 103 S. Ct. at 2332; see
U.S. Const. amend. IV; Ramos v. State, 934 S.W.2d 358, 362B63 (Tex.
Crim. App. 1996), cert. denied, 520 U.S. 1198 (1997).








Probable cause will be found to exist if the
affidavit shows facts and circumstances within the affiant=s
knowledge and of which the affiant has reasonably trustworthy information
sufficient to warrant a person of reasonable caution to believe that the
criteria set forth in code of criminal procedure article 18.01(c) have been met.  Tolentino, 638 S.W.2d at 501; see
Tex. Code Crim. Proc. Ann. art. 18.01(c) (Vernon Supp. 2008).  The affidavit must set forth facts which
establish that (1) a specific offense has been committed, (2) the property to
be searched or items to be seized constitute evidence of the offense or
evidence that a particular person committed the offense, and (3) the property
or items are located at or on the person, place, or thing to be searched.  Tex. Code Crim. Proc. Ann. art. 18.01(c); Tolentino,
638 S.W.2d at 501.  Although a search
warrant affidavit may not be based solely on hearsay or conclusory statements,
a search warrant affidavit is not to be deemed insufficient on that score so
long as a substantial basis for crediting the hearsay exists or corroborating
facts within the officer=s knowledge exist,
respectively.  See Gates, 462 U.S.
at 241B43, 103
S. Ct. at 2333B35.








A reviewing court should not invalidate a warrant
by interpreting the affidavit in a hypertechnical manner.  See Gates, 462 U.S. at 236, 103
S. Ct. at 2331; Rodriguez, 232 S.W.3d at 59.  Rather, when a court reviews an issuing
magistrate=s determination, the court
should interpret the affidavit in a commonsense and realistic manner,
recognizing that the magistrate may draw reasonable inferences.  See Rodriguez, 232 S.W.3d at
61; Davis v. State, 202 S.W.3d 149, 154 (Tex. Crim. App. 2006).

B.     The Search Warrant for Blood Draw[4]

The facts alleged in Officer Hansard=s
affidavit include:  that Martin was
involved in a three-vehicle accident, that he fled the scene of the accident,
that he appeared very intoxicated and was very uncooperative, that he was found
in possession of numerous narcotics, that he had a prior DWI arrest, that he
stated that his lawyer had told him that he did not have to do anything the
officers requested, that his speech was slurred and thick, that his eyes were
heavy, that his walk and balance were unsteady, and that he was combative
towards the officers.  After reviewing
Officer Hansard=s affidavit, a magistrate issued
the search warrant for blood draw.  Prior
to trial, Martin filed a motion to suppress all evidence obtained pursuant to
the search warrant for blood draw.  The
trial court denied the motion to suppress.

C.     No Conclusory Statements








On appeal, Martin first argues that the statement
in Officer Hansard=s affidavit that Martin Aappeared
very intoxicated@ is a mere conclusion
unsupported by other observations.  To
the contrary, Officer Hansard explicitly provided other facts in her affidavit
to support her belief that Martin appeared intoxicated, namely that he failed
to cooperate, was combative with officers, slurred his speech, and exhibited
heavy eyes and unsteady balance.  We hold
that from the totality of the circumstances reflected in the affidavit, Officer
Hansard=s
statement that Martin Aappeared very intoxicated@ was not
conclusory and was properly included in her affidavit; the statement was based
on sufficient underlying facts set forth in the affidavit from which the
magistrate could independently determine whether probable cause existed that
Martin was probably intoxicated while driving. 
Cf. McKissick v. State, 209 S.W.3d 205, 212 (Tex. App.CHouston
[1st Dist.] 2006, pet. ref=d)
(concluding that affidavit did not rely on conclusory statements to such an
extent that it was insufficient to show probable cause); Rodriguez v. State,
781 S.W.2d 946, 949 (Tex. App.CDallas
1989, pet. ref=d) (upholding search warrant
when affidavit contained some conclusory statements regarding information
received from informant because affidavit also recited investigation and
activities by police, which added additional details and corroboration of facts
received from informant).

D.     Omitted Fact Does Not Vitiate Probable
Cause








Martin next argues that the statement in Officer
Hansard=s
affidavit concerning the Anumerous narcotics@ found
in his possession was misleading because, in fact, the narcotics were Martin=s
prescription medications.  Martin argues
that Officer Hansard=s failure to state in her
affidavit that the narcotics were prescription drugs belonging to Martin was a
knowing omission rendering her affidavit insufficient to support a probable
cause finding.








The United States Supreme Court has held that an
affirmative misrepresentation of a material fact that establishes probable
cause, made knowingly or recklessly in a probable cause affidavit, will render
a search warrant invalid under the Fourth Amendment.  See Franks v. Delaware, 438
U.S. 154, 155B56, 98 S. Ct. 2674, 2676
(1978).  Although the Texas Court of
Criminal Appeals has never directly decided whether a Franks analysis
applies to omissions,[5]
this court, other Texas courts of appeals, and the Fifth Circuit have held
that, when a defendant seeks to suppress evidence lawfully obtained by a
warrant based on an alleged omission in the affidavit supporting the warrant,
he must establish by a preponderance of the evidence that the omission was made
knowingly, intentionally, or with reckless disregard for the truth in an
attempt to mislead the magistrate.  See Darby v. State, 145 S.W.3d 714, 722
(Tex. App.CFort Worth 2004, pet. ref=d); McKissick,
209 S.W.3d at 211B14; Heitman v. State, 789
S.W.2d 607, 610 (Tex. App.CDallas
1990, pet. ref=d); Melton v. State, 750
S.W.2d 281, 284 (Tex. App.CHouston
[14th Dist.] 1988, no pet.); see also United States v. Martin, 615 F.2d
318, 328 (5th Cir. 1980).  Accordingly,
if a defendant establishes by a preponderance of the evidence that omissions of
fact were made in a probable cause affidavit and that such omissions were made
knowingly, intentionally, or with reckless disregard for the truth, the warrant
will be held invalid if the inclusion of the omitted facts would vitiate
probable cause.  Martin, 615 F.2d
at 328.








Here, the record does not reflect that Officer
Hansard intentionally or knowingly, with reckless disregard for the truth, made
any omissions in the affidavit that would affect the finding of probable cause
to support the issuance of the search warrant for blood draw.  Martin has not shown that use of the phrase Anumerous
narcotics@ constituted a material
misrepresentation or that Officer Hansard=s
failure to specifically identify the narcotics as prescription drugs prescribed
to Martin constituted an omission made by Officer Hansard intentionally or
knowingly with reckless disregard for the truth in an attempt to mislead the
magistrate.  Nor has Martin shown that
the affidavit, if supplemented with the omitted informationCthat is,
that the numerous narcotics were prescription drugs prescribed to MartinCwould be
insufficient to support a finding of probable cause.[6]  Therefore, we hold that the affidavit was not
rendered insufficient by the omission of the fact that the Anumerous
narcotics@ referenced in the affidavit
were Martin=s prescription drugs.  See Darby, 145 S.W.3d at 722B23
(concluding that affidavit for search warrant was not rendered invalid by the
omission of material facts); see also Garza v. State, 161 S.W.3d 636,
641 (Tex. App.CSan Antonio 2005, no pet.)
(upholding warrant when affidavit omitted reference to fact that witness gave
conflicting testimony to police when initially interviewed).

E.     Additional
Statements Can Be Omitted Without Vitiating Probable Cause

 













Martin=s final
argument within his first and second points is that Officer Hansard=s
statements in the affidavit that Martin was Abeing
uncooperative and requested counsel could not be taken as evidence to support
the issuance of the warrant@ because
A[a]
request for counsel cannot be used as an inference of guilt.@  But the affidavit here does not contain a
statement that Martin requested counsel; instead, the affidavit contains the
statement that Martin Astated that his lawyer told him
that he did not have to do anything officers requested.@  That statement, when viewed from the totality
of the circumstances, would appear to explain why Martin refused to perform
field sobriety tests and why the blood draw was needed but does not constitute
a request for counsel.  Accord Dinkins
v. State, 894 S.W.2d 330, 350B52 (Tex.
Crim. App.) (holding that record did not support a showing that appellant
requested an attorney even though at some point during the interrogation
appellant asked detective Awhat a
lawyer would tell him to do,@ and
detective informed appellant Ain no
uncertain terms that a lawyer would tell him to keep his mouth shut and not to
talk to the police at all@), cert. denied, 516 U.S.
832 (1995).  Even leaving out those two
statementsCthat Martin was uncooperative
and that he stated that his lawyer told him that he did not have to do anything
officers requestedCthe affidavit alleges sufficient
other facts, which are set forth above, to support a finding of probable cause
for issuance of a search warrant for blood draw.  As such, we hold that the affidavit provided
the magistrate with sufficient information to support an independent judgment
that probable cause for DWI existed for the search warrant for blood draw.  See Pitonyak v. State, 253 S.W.3d 834, 848
(Tex. App.CAustin 2008, pet. ref=d)
(holding that if tainted information is unnecessary to establish probable cause
for the warrant, then the defendant could not have been harmed by the inclusion
of the tainted information); Riley v. State, No. 03-04-00206-CR, 2004 WL
2900508, at *1 (Tex. App.CAustin Dec. 16, 2004, pet. ref=d) (mem.
op., not designated for publication) (stating that even if challenged passage
is removed from affidavit, the remaining information stated probable cause for
issuing the search warrants).

F.      Motion
to Suppress Properly Denied








In light of the information contained within the
four corners of Officer Hansard=s
affidavit, we hold that, considering the totality of the circumstances, the
magistrate had a substantial basis for concluding that probable cause existed
to support the issuance of the search warrant for blood draw.  See Gates, 462 U.S. at 238, 103 S. Ct.
at 2332; Vafaiyan v. State, 279 S.W.3d 374, 384 (Tex. App.CFort
Worth 2008, pet. ref=d) (holding that when considered
together with the other evidence described within the four corners of the
affidavits, the totality of the circumstances provided the magistrate with a
substantial basis for concluding probable cause existed to search); see also
Goodrum v. State, No. 01-01-00950-CR, 2003 WL 1995634, at *5 (Tex. App.CHouston [1st
Dist.] May 1, 2003, pet. ref=d) (mem.
op., not designated for publication) (concluding that, under the totality of
the circumstances, the magistrate had sufficient evidence linking appellant to
the crime to issue a search warrant allowing police to draw his blood to
further their investigation). 
Accordingly, we hold that the trial court did not abuse its discretion
by denying Martin=s motion to suppress and by
admitting the blood test result.  See
Cantu v. State, No. 05-07-01625-CR, 2009 WL 1479412, at *2 (Tex. App.CDallas
May 28, 2009, no pet.) (not designated for publication) (holding that trial
court did not err by denying appellant=s motion
to suppress after appellate court reviewed the affidavit as a whole and
concluded that affidavit authorized magistrate=s
issuance of search warrant for collection of buccal swabs); Torres v. State,
No. 04-07-00522-CR, 2009 WL 89695, at *3 (Tex. App.CSan
Antonio Jan. 14, 2009, pet. ref=d) (mem.
op., not designated for publication) (holding that trial court did not abuse
its discretion by denying motion to suppress the results of the legal blood
draw and by admitting that evidence at trial). 
We overrule Martin=s first and second points.

IV.
 Challenges to Dr. Springfield=s
Testimony;

Martin
Failed to Preserve Rule 702 Argument

 

A.     Rule 702 Challenge








In his third point, Martin argues that the trial
court abused its discretion by allowing lab supervisor Dr. Angela Springfield
to testify.  Martin argues that Dr.
Springfield=s testimony did not comport with
Texas Rule of Evidence 702 because she did not personally conduct the blood
tests on Martin=s blood sample and because her
testimony failed to establish that the technique that was used to test the
blood sample was properly applied.








To preserve a complaint for our review, a party
must have presented to the trial court a timely request, objection, or motion
that states the specific grounds for the desired ruling if they are not
apparent from the context of the request, objection, or motion.  Tex. R. App. P. 33.1(a)(1); Mosley v.
State, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh=g), cert.
denied, 526 U.S. 1070 (1999). 
Further, the trial court must have ruled on the request, objection, or
motion, either expressly or implicitly, or the complaining party must have
objected to the trial court=s
refusal to rule.  Tex. R. App. P.
33.1(a)(2); Mendez v. State, 138 S.W.3d 334, 341 (Tex. Crim. App.
2004).  An objection preserves only the
specific ground cited.  Tex. R. App. P.
33.1(a)(1)(A); Mosley, 983 S.W.2d at 265; Bell v. State, 938
S.W.2d 35, 54 (Tex. Crim. App. 1996), cert. denied, 522 U.S. 827 (1997);
see also Fierro v. State, 706 S.W.2d 310, 317B18 (Tex.
Crim. App. 1986) (holding that general objection is insufficient to apprise
trial court of complaint urged and thus preserves nothing for review), cert.
denied, 521 U.S. 1122 (1997).  The
complaint made on appeal must comport with the complaint made in the trial
court or the error is forfeited.  Heidelberg
v. State, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004); Bell, 938
S.W.2d at 54; Rezac v. State, 782 S.W.2d 869, 870 (Tex. Crim. App.
1990).

Martin, without giving a reason for doing so,
asked to take Dr. Springfield on voir dire outside the presence of the
jury.  The trial court granted Martin=s
request.  Dr. Springfield testified that
she did not personally perform the tests on Martin=s blood
and that she could not recall whether she had witnessed the tests but that she
could attest to the fact that the procedures of the laboratory were followed
and that the controls, standards, and data retrieved were appropriate.








On appeal, Martin argues that the trial court
erred by admitting the testimony of Dr. Springfield because it did not comport
with rule 702.[7]  But Martin did not assert a rule 702
objection in the trial court.  Because
Martin failed to object at trial to Dr. Springfield=s
competency to testify as an expert, he has forfeited this argument on
appeal.  See Martinez v. State, 22
S.W.3d 504, 507 (Tex. Crim. App. 2000) (stating that defendant=s
repeated objections concerning her right to confront witnesses did not preserve
error on the ground that witness was not qualified as an expert when defendant
did not once object to witness=s
qualifications as an expert); Matson v. State, 819 S.W.2d 839, 852 (Tex.
Crim. App. 1991) (stating that A[i]t is
a familiar rule of law that the failure to object to a witness=s
competency to testify operates as a waiver of the witness=s
qualifications and may not be raised for the first time on appeal@).  We therefore overrule Martin=s third
point.

B.     Confrontation Clause Challenge

In his fourth point, Martin argues that the trial
court abused its discretion by admitting the testimony of Dr. Springfield on
the ground that the testimony violated his rights under the Confrontation
Clause.  Martin contends that Dr.
Springfield=s testimony deprived him of the
opportunity to confront and cross-examine a witness against him because he was
unable to question the person who had performed the testing on his blood
sample.

In Crawford v. Washington, the
United States Supreme Court held that admitting a statement made by a
nontestifying declarant offends the Confrontation Clause of the Sixth Amendment
if the statement was Atestimonial@ when
made and the defendant lacked a prior opportunity for cross-examination.  541 U.S. 36, 68, 124 S. Ct. 1354, 1374
(2004).  Thus, Crawford applies to
a nontestifying declarant=s out-of-court statements that
are testimonial.













Here, after Martin questioned Dr. Springfield
outside the presence of the jury, he objected to Dr. Springfield=s
testimony on the ground that it violated his rights under the Confrontation
Clause because he was unable to confront the person who actually performed the
blood tests.[8]  The trial court overruled Martin=s
Confrontation Clause objection.  Dr.
Springfield then testified before the jury without objection regarding the
chain of custody of the vials of Martin=s blood
and the testing procedures utilized on Martin=s blood
samples.[9]  She stated that three types of tests were
performed, and she described the purpose, process, and results of each test,
including the general effects that each substance found in Martin=s blood
would have on the human body.  She
testified that the substances found in Martin=s blood
included meprobamate, diazepam, nordiazepam, and methadone; that the
synergistic effect of these drugs would cause a person to lose the normal use
of his or her physical and mental faculties; and that she would deem such a
person intoxicated.  The toxicology test
results, which were signed by Dr. Springfield, were then admitted into evidence
without objection.  Martin then
cross-examined Dr. Springfield.








We conclude that Dr. Springfield=s
testimony about the chain of custody of the vials of Martin=s blood
and the testing procedures utilized on Martin=s blood
samples is not governed by Crawford because no out-of-court statement
was admitted through her testimony. 
Rather, Dr. Springfield=s
in-court testimony was admitted  based
upon her own personal knowledge acquired from having trained and worked at the
Tarrant County Medical Examiner=s
laboratory.  The Sixth Amendment concerns
about out-of-court-statements at issue in Crawford, therefore, do not
apply to Dr. Springfield=s in-court testimony.  See Camacho v. State, Nos.
2-07-322-CR, 2009 WL 2356885, at *3 (Tex. App.CFort Worth
July 30, 2009, no pet. h.) (mem. op., not designated for publication) (holding
that Sixth Amendment concerns at issue in Crawford did not apply to
testimony that was chemist=s
in-court statement based upon her own personal knowledge acquired from having
trained and worked at the DPS laboratory); Blaylock v. State, 259 S.W.3d
202, 207B08 (Tex.
App.CTexarkana
2008, pet. ref=d) (holding that testimony of
the expert witness concerning the chemical analysis of the substance, which was
determined by applying his expertise to reliable scientific test data, was
admissible as he was subject to cross‑examination, so the requirements of
the Confrontation Clause were fulfilled), cert. denied, 77 U.S.L.W. 3710
(U.S. June 29, 2009) (No. 08-8259). 
Thus, we hold that the trial court did not abuse its discretion by
admitting Dr. Springfield=s in-court testimony concerning
analysis of the blood test results over Martin=s
Confrontation Clause objection.  We
overrule Martin=s fourth point.

V.  Trial Court=s
Sentence Was Proper

In his fifth point, Martin argues that the trial
court erred by sentencing him on the DWI to twenty-four months=
community supervision and by ordering him to serve five days=
confinement as a condition of community supervision.  Specifically, Martin claims that because the
DWI arose out of the same criminal episode as his conviction for failure to
stop and render aid, the trial court could not order community supervision that
required him to serve five additional days when the statute provides that
sentences for offenses arising out of the same criminal episode must run
concurrently.  Additionally, Martin
argues that his sentence is illegal because it exceeds the maximum sentence
allowed by law for the charge of DWI - misdemeanor repetition.








We review a trial court=s
decision to cumulate sentences for an abuse of discretion.  See Tex. Code Crim. Proc. Ann. art.
42.08(a) (Vernon 2006); Nicholas v. State, 56 S.W.3d 760, 764 (Tex. App.CHouston
[14th Dist.] 2001, pet. ref=d);
see also Cyphers v. State, No. 12-07-00304-CR, 2009 WL 606550, at *3 (Tex.
App.CTyler
Mar. 11, 2009, pet. filed) (mem. op., not designated for publication).  As a practical matter, however, an abuse of
discretion generally will be found only if the trial court imposes consecutive
sentences where the law requires concurrent sentences, where the trial court
imposes concurrent sentences but the law requires consecutive ones, or where
the trial court otherwise fails to observe the statutory requirements
pertaining to sentencing.  Nicholas,
56 S.W.3d at 765; Cyphers, 2009 WL 606550, at *3.

When a defendant is found guilty of more than one
offense arising out of the same criminal episode prosecuted in a single
criminal action, a sentence for each offense for which he has been found guilty
shall be pronounced, and unless an exception applies, the sentences shall run
concurrently.  Tex. Penal Code Ann. ' 3.03(a)
(Vernon Supp. 2008).  AA >single
criminal action= refers to a single trial or
plea proceeding; as such, a defendant is prosecuted in a >single
criminal action= when allegations and evidence
of more than one offense arising out of the same criminal episode are presented
in a single trial or plea proceeding.@  Malone v. State, 163 S.W.3d 785, 804 (Tex.
App.CTexarkana
2005, pet. ref=d).








Here, the record clearly demonstrates that, while
the charges for DWI - misdemeanor repetition and failure to stop and render aid
may have arisen out of the same criminal episode, they were not adjudicated in
a Asingle
criminal action.@ 
See id.  In fact, the DWI
record before us offers little evidence concerning Martin=s
conviction for failure to stop and render aid. 
As such, the trial court did not err by failing to have the sentence
from Martin=s DWI - misdemeanor repetition
conviction run concurrently with his conviction for failure to stop and render
aid because the two convictions were tried in separate criminal actions.  See Tex. Penal Code Ann. ' 3.03(a);
Ex parte Pharr, 897 S.W.2d 795, 796 (Tex. Crim. App. 1995) (holding that
cumulation order did not violate section 3.03 when statement of facts showed
that in cause number 7760 applicant pleaded guilty, was admonished, was found
guilty, and was sentenced and immediately thereafter, in cause number 7761
applicant pleaded guilty, was admonished, was found guilty, and was sentenced
because record supported trial court=s
finding that applicant was not tried in a single criminal action).








Moreover, the sentence was not illegal.  Texas Code of Criminal Procedure article
42.12, section 13(a)(1) mandates that a judge granting community supervision to
a defendant convicted of an offense under chapter 49 of the penal code, which
includes DWI, shall require as a condition of community supervision that the
defendant submit to not less than five days=
confinement.  Tex. Code Crim. Proc. Ann.
art. 42.12, ' 13(a)(1) (Vernon Supp.
2008).  Under section 13(e), it states
that the confinement imposedChere,
the five daysCshall be treated as a condition
of community supervision.  Id.
art. 42.12, ' 13(e).  And while community supervision is part of
the Ajudgment,@ it is
not part of the Asentence,@ as
those terms are defined in the Texas Code of Criminal Procedure.  Speth v. State, 6 S.W.3d 530, 532
(Tex. Crim. App. 1999), cert. denied, 529 U.S. 1088 (2000).

Therefore, we hold that the trial court did not
err by placing Martin on twenty-four months=
community supervision after he had already served two years for his failure to
stop and render aid conviction because penal code section 3.03(a) did not
apply; nor did the trial court err by ordering Martin to serve five days=
confinement as a condition of community supervision because the confinement is
mandated by code of criminal procedure article 42.12, section 13(a)(1).  See Tex. Penal Code Ann. ' 3.03(a);
Tex. Code Crim. Proc. Ann. art. 42.12, '
13(a)(1).  We overrule Martin=s fifth
point.








VI.  Conclusion

Having overruled Martin=s five
points, we affirm the trial court=s
judgment.

 

SUE
WALKER

JUSTICE

 

PANEL:  CAYCE, C.J.; WALKER and MEIER, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  August 6, 2009











[1]See Tex. R. App. P. 47.4.





[2]During the punishment
hearing, Martin pleaded true to a prior 2005 DWI conviction.





[3]In this case, Judge Billy
Mills from County Criminal Court No. 3 issued the blood draw warrant.  Throughout the remainder of the opinion, we
refer to him as Amagistrate@ to reflect the capacity
in which he was serving.





[4]Because the search
warrant at issue bears this title, we use the same title for ease of reference.





[5]See Ward v. State, No. AP‑74695,
2007 WL 1492080, at *3B4 (Tex. Crim. App. May
23, 2007) (not designated for publication) (stating that A[t]his Court has yet to
state clearly that Franks should apply to omissions@ and that A[w]e need not decide that
issue today@), cert. denied,
128 S. Ct. 650 (2007); see also Renteria v. State, 206 S.W.3d 689, 704
(Tex. Crim. App. 2006) (assuming that Franks applied to omissions in an
affidavit).





[6]The State points out that


 

[i]t is difficult to
fathom how [the fact that the Anumerous narcotics@ were Martin=s prescription
medications] could have been relevant to a magistrate trying to determine the
existence of probable cause.  If the
suspect is driving around in what seems to be a mobile drug store, and appears
to be under the influence of narcotics, it hardly matters whether his drugs are
in neat bottles or in a more traditional Ajunkie@ packaging. 

 

Moreover, the voluntary
taking of prescription drugs, which impair mental or physical faculties, is not
a defense to DWI.  See generally Nelson
v. State, 149 S.W.3d 206, 210 (Tex. App.CFort Worth 2004, no pet.).





[7]Texas Rule of Evidence
702 provides that if scientific, technical, or other specialized knowledge will
assist the trier of fact to understand the evidence or to determine a fact in
issue, a witness qualified as an expert by knowledge, skill, experience,
training, or education may testify thereto in the form of an opinion or
otherwise.  Tex. R. Evid. 702.





[8]The specific objection
Martin made at trial is as follows:

 

[MARTIN=S COUNSEL]: 
Your Honor, we=re going to object based
on the confrontation clause.  She says
she=s not the one who
actually did the tests.  I can=t question the person who
did the test to how they done it to see exactly whether they done it properly
and all of that.  She has records that
she=s reviewed, but she=s not -- she=s not the one who did it.  So I=m going to make a confrontation clause objection
to the admission of this evidence.





[9]As noted above, Dr.
Springfield did not perform the tests herself.